IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

IN RE:                      :        CASE NO. 12-06338(ESL)

GULFCOAST IRREVOCABLE TRUST    :        CHAPTER 11

      Debtor                  :
_____ :

IN RE:                      :        CASE NO. 12-06339(ESL)

GULFCOAST IRREVOCABLE        :        CHAPTER 11
TRUST XIV

      Debtor                  :
_____ :

IN RE:                      :        CASE NO. 12-06340(ESL)

GULFCOAST IRREVOCABLE        :        CHAPTER 11
TRUST XIX

      Debtor                  :
_____ :

## OPINION AND ORDER

The above captioned cases are before the court upon the motion to dismiss the petitions as having been filed in the improper venue, or, in the alternative, to transfer venue to the United States Bankruptcy court for the Middle District of Florida, Tampa Division, filed by the Federal Deposit Insurance Corporation, as receiver for Westernbank Puerto Rico ("FDIC-R"). The motion was filed in each bankruptcy petition. The debtors have opposed the motion alleging that the debtors' principal place of business is in Puerto Rico.

Background

On August 10, 2012, GULFCOAST IRREVOCABLE TRUST I, GULFCOAST IRREVOCABLE TRUST XIV, and GULFCOAST IRREVOCABLE TRUST XIX (the "Trusts" or "Debtors") filed voluntary bankruptcy petitions under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Puerto Rico.[1] Debtors claim in their petition to be

[1] The court notes that also pending before this court is the motion filed by FDIC-R to transfer venue to the United States Bankruptcy Court for the Middle District of Florida, Tampa Division.

business trusts.  The trusts were formed pursuant to a "Trust Agreement" executed on May 16, 1988 for GULFCOAST IRREVOCABLE TRUST I; October 3, 1999 for GULFCOAST IRREVOCABLE TRUST XIV; and June 28, 2005 for GULFCOAST IRREVOCABLE TRUST XIX.  The "trust agreements" are essentially the same in their context.  Therefore, they will all be jointly addressed in this opinion and order.

The Trusts

The trust agreements were executed by Mr. Michael J. Scarfia (" Mr. Scarfia"), as settlor, and Mr. Michael J. Scarfia, as trustee.  Thus, Mr. Scarfia is both the settlor and the trustee. The settlor transfers to the trustee without consideration, the property which constitutes the trust estate.  The trusts are irrevocable.  The trustee, Michael J. Scarfia, shall pay to the settlor, Michael J. Scarfia, during his life all the net income from the trust estate. In addition to income, the trustee may pay the settlor the principal of the trust estate that may be needed for his maintenance and support, including his funeral expenses.

Upon the death of the settlor, all the trust income and principal will be paid to Mr. Scarfia's heirs in the amounts and conditions specified in the trust agreement.

Article IV of the trust agreements defines the powers of the trustee relative to the trust estate.  The trustee has virtually unlimited power to retain assets, make investments, manage securities, operate or otherwise dispose of the trust estate, borrow funds and encumber the trust estate, procure whatever insurance the trustee deems appropriate, adjust claims, commence or defend litigation, pay administrative expenses, and employ attorneys or other professional persons.  The limitations on the trustee's powers are that the same are only on a fiduciary capacity, and may enter into transactions that are not for less than an adequate consideration in money.  However, in the following article (Article V. Duties and Compensation of the Trustee) the trustee is given freedom to determine what is the income, expenses and transfers of principal that will be effectuated; and '[n]o one dealing with the Trustee need inquire concerning the validity of anything he purports to do, or need see to the application of any money paid or any property transferred to or on the order of the Trustee."

"Upon the death of the Trustee, the personal representative of the deceased Trustee's estate[s] shall become the Successor Trustee for the deceased Trustee."  Also, upon the successor trustee's

resignation the designation of a successor trustee will be made in accordance to the laws of Florida. The trust agreements are governed by laws of the State of Florida.

Position of the parties

FDIC-R alleges that the following facts support its requests: Debtors' key employees and professionals live in or near Clearwater, Florida; the FDIC-R holds the vast majority of all claims; the majority of Debtors' assets are located in or near Clearwater, Florida; the books and records are located in or near Clearwater, Florida; and Debtors' primary counsel practices in Tampa, Florida. Based on these facts, the FDIC-R concludes that the Debtors' main place of business is Clearwater, Florida. The FDIC-R further alleges that the debtors are fabricating venue and engaged in forum shopping by having affiliates file bankruptcy in Puerto Rico. FDIC-R also alleges that traveling to Puerto Rico is an inconvenience.

The Debtors oppose the request disclosing that the FDIC-R has filed collection actions in the district of Puerto Rico wherein the Debtors are guarantors of the primary defendants. The collection actions are on credit facilities granted by Westernbank for the acquisition of land and financing of construction projects in Puerto Rico. The real properties given as collateral to the credit facilities are located in Puerto Rico.

Gulfcoast Irrevocable Trust I (Case no. 12-06338) serves as the holding company and owns 100% of the shares of Gibraltar Construction Company, Inc., Gibraltar Development Corp., and Gulfcoast Contractors, Inc. Gulfcoast Irrevocable Trust XIV (Case no. 12-06339) serves as a holding company and owns 50% of the shares of Yasscar Caguas Development, Corp. and Yasscar Development, Corp. Gulfcoast Irrevocable Trust XIX (Case no. 12-06340) is the holding company and owns 49.5% of the shares of JM Ponce III, LP, S.E. The corporations owned by the Debtors, as a holding company and owner of shares, do business in Puerto Rico.

For these reasons, the Debtors conclude that their principal place of business is in Puerto Rico and that forum non convenience allegations are unavailing.

The FDIC-R replied to the Debtors' opposition alleging that the Debtors are not actually operating as a business as their monthly report of operations on file show no or minimal expenses or cash flow; that their address of record is in Clearwater, Florida, and that they are a mere holding

company of affiliates operating in Puerto Rico. FDIC-R filed foreclosures actions in Puerto Rico because the same are *in rem* proceedings and the real properties belonging to affiliates are located in Puerto Rico. The majority of decisions are made by Mr. Scarfia from his home in Clearwater, Florida. Thus, while FDIC-R agrees with the Debtors that the appropriate test to determine venue is where is the principal place of business, the facts show that Clearwater, Florida is the Debtors' principal place of business.

After reviewing the factual allegations by all parties and the responses to the same, the court concludes that each party's factual allegations are not contested by the opposing party. The issue lies in the conclusions derived from the same.

Venue and Change of Venue

Venue of cases filed under the Bankruptcy Code is governed by 28 U.S.C. §1408 which provides that:

> Except as provided in Section 1410 of this title, a case under title 11 may be commenced in the district court for the district — (1) in which the domicile, residence, principal place of business in the United States, or principal assets in the United States, of the person or entity that is the subject of such case have been located for the one hundred and eighty days immediately preceding such commencement, or for a longer portion of such one hundred and eighty day period than the domicile, residence, or principal place of business, in the United States, or principal assets in the United States, of such person were located in any other district; or (2) in which there is pending a case under title 11 concerning such person's affiliate, general partner, or partnership.

Venue relates to the place where a bankruptcy case may be filed. Section 1408 provides that it is proper to file a bankruptcy case on any of the four grounds specified in section 1408: domicile, residence, principal place of business or principal assets. In addition, a bankruptcy case may be commenced in a district where an affiliate has a bankruptcy case pending.

Both the FDIC-R and the Debtors agree that the proper venue of these cases lies in the place which constitutes their principal place of business. The FDIC-R contends that the Debtors' principal place of business is in Clearwater, Florida, as there is where the trustee resides and where most decisions are made. The Debtors take the position that the principal place of business is in Puerto Rico as that is where their affiliates operate. "Courts differ on how to determine the debtor's

principal place of business. Many courts have held that the principal place of business is determined by using the 'major business decisions' test and not the 'operational' test. The former focuses on the place where the major decisions affecting the debtor's business are made, and the latter focuses on where the debtor's day-to-day business is conducted." [Citations omitted] Hon. Nancy C. Dreher and Hon. Joan Feeney, Bankruptcy Law Manual §2:35 (5th ed. 2012). In these cases the decisions are made in Clearwater, Florida; and the monthly reports of operation do not reflect any significant operation. Therefore, under either test, Clearwater, Florida, is the principal place of business.

The venue provisions of section 1408 are tempered by 28 U.S.C. § 1412, which provides that: "A district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties." Fed. R. Bankr. P. 1014(a)(1) implements section 1412. The transfer provisions become effective when the petition is filed in the proper venue.

Because we have determined that the petition was filed in the improper venue, the relevant statutory provision is 28 U.S.C. §1406(a) which provides that: "The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." Section 1406 is implemented by Fed. R. Bankr. P. 1014(a)(2). Section 1406(a), in conjunction with Fed. R. Bankr. P. 1014(a)(2), allow for either dismissal or transfer. Hon. Nancy C. Dreher and Hon. Joan Feeney, Bankruptcy Law Manual §2:37 (5th ed. 2012). Pending before this court is a motion to dismiss filed by the FDIC-R on the ground that the Debtors are not business trusts, and, therefore are not eligible to file a bankruptcy petition. The court, on even date, has entered an opinion and order concluding that the FDIC-R has made a *prima facie* case on its allegation that the Debtors are not a business trust. However, the Debtors have been granted time to further argue their position by supplementing the applicable facts. If the court finally determines that the Debtors are not eligible to file a bankruptcy petition, the instant controversy becomes moot. If the court does not dismiss the cases on eligibility grounds, then it must determine whether to dismiss for lack of proper venue or to transfer the cases to the United States Bankruptcy Court for the Middle District of Florida, Tampa Division.

Conclusion

In view of the foregoing, the court concludes that the petitions were filed in an improper venue. However, the final determination as to whether the same should be transferred to the U.S. Bankruptcy Court for the Middle District of florida, Tampa Division, is held in abeyance until a final determination is made on the FDIC-R's motion to dismiss.

SO ORDERED.

In San Juan, Puerto Rico, this 30th day of November, 2012.

Enrique S. Lamoutte
United States Bankruptcy Court